W. C. SPENCER, Sheriff, Hillsborough County, v. ALFONSO GOMEZ.

154 So. 858.
En Banc.
Opinion Filed May 5, 1934.

*J. Rex Farrior,* State Attorney, for Plaintiff in Error;
*W. B. Dickenson,* for Defendant in Error.

BROWN, J.—In habeas corpus proceedings, the defendant in error was discharged from custody of the circuit judge, on the ground that no prosecution had been instituted within two years from the time the offense charged was alleged to have been committed, and the plaintiff in error, the Sheriff of Hillsborough County, has brought the judgment of discharge before us for review on writ of error.

While the facts alleged in the petition for the writ in this case are substantially the same as those in the petition in the case of Gomez v. Spencer, decided by this Court on

December 8, 1933, and reported in 151 So. 395, there is one material difference in the two cases. In the former case, the circumstances attending the purported filing of the information were alleged in the petition, but no evidence was adduced in support thereof, except the information itself and capias. The sheriff in his return in the former case alleged that the information was duly filed, as shown by copy of the information attached to the petition, which had an endorsement of filing thereon, but he further alleged that he was without knowledge concerning any instructions which the then County Solicitor may have given any officer of said criminal court of record, he not being an officer at the time. There, as here, both the information and the capias were valid on their face, and the information bore an endorsement of filing signed in the name of the clerk by his deputy. It was therefore observed in that case that:

"The allegations in the petition that the county solicitor after having sworn to the information, caused a deputy clerk to mark it filed and immediately withdrew it and retained possession of it, and instructed the clerk not to docket the same or enter the same on the minutes, raises a very serious question as to whether the information ever in fact passed out of the custody of the county solicitor and into the custody of the clerk of the court; or to express it another way, whether there was ever a *bona fide filing* of the information within the meaning of the statute, which is, of course, essential to the validity of the information. But here we have a question of fact, a matter *in pais,* a matter *de hors* the record, presented to us in such fashion that we cannot dispose of it on this habeas corpus proceeding."

Now, in this case, it appears that the clerk and his deputy were summoned as witnesses before the circuit judge on the hearing, and there also appears in this record a stipulation

as to the facts of this case, signed by the State Attorney, attorney for the plaintiff in error here, and also by the attorney- for the defendant in error, which, among other things, contains the following:

"That on July 3, 1928, the then county solicitor caused the deputy clerk in the office of the Clerk of the Criminal Court of Record of said County to mark said information "Filed" as is indicated on the copy thereof referred to as Exhibit "B" in the foregoing paragraph, and immediately thereafter withdrew the same and the capias issued thereon from said office, at the time instructing that same be not docketed or entered in the Minutes Record in said Court; and that no record was made of said information and capias in the progress docket, or any other docket in said office until the month of August, 1933; and that no record of said alleged information was entered in the Minutes of the Criminal Court by its Clerk, or any other officer, until the month of August, 1933."

There is also in the record an affidavit of the clerk, attached to the petition to the effect that no record was made of this information or docket entry until August, 1933. None of these facts, which were alleged in the petition. were denied by the sheriff's return, which merely alleged that he held the petitioner upon a capias issuing from the criminal court of record, evidently referring to the capias described in the petition for the writ.

Thus, in this case, the question was presented to the court below as to whether or not there was such a *filing* of the information in the criminal court of record as the constitution and the statutes contemplate. Most of the statutes bearing on this subject were quoted in our former opinion in the case of Gomez v. Spencer, *supra,* to-wit: Sections 8257, 8258, and 8375, Comp. Gen. Laws of 1927. The Constitu-

tion also requires the information to be "filed." Sec. 28, Art. V, of Const. Counsel for plaintiff in error here calls our attention to Sec. 8366, C. G. L., which reads as follows:

"The rules of pleading and practice relative to indictments shall obtain as to informations *so far as they shall be applicable.*" (Italics supplied.)

The information in this case is valid on its face, as was also the capias issued thereon. The information charges the defendant and certain other persons with an assault upon Henry B, Airth with the intent to murder him. It was duly sworn to by the then County Solicitor of Hillsborough County on July 3, 1928. The jurat to this affidavit is signed in the name of the clerk of the criminal court of record by his deputy clerk, which was held to be a sufficient jurat in the case of State, *ex rel.* Melson v. Peeler, 107 Fla. 615, 146 So. 188. There was an endorsement on this information showing that it was filed on the same date, July 3, 1928, also signed in the name of the clerk by his deputy clerk. But it appears from the stipulation and the clerk's affidavit that no record whatever of said information was made in the court's records until five years later, the information itself having been immediately withdrawn by the county solicitor as soon as it was marked "Filed."

The capias upon which the sheriff arrested the defendant in error was endorsed as an "alias capias" and was dated February 18, 1929, and executed April 7, 1933.

The question arises, was there a valid filing of the information within the meaning of our Constitution and statutes, so as to amount to the institution of a prosecution within two years after the alleged commission of the offense charged? And if there was no valid filing of the information, did that render the information fatally defective and

void, and, if so, did that present such a question as could be raised in this habeas corpus proceeding?

We have held in State v. Peeler, *supra,* that the prosecution is begun when the information is "duly filed;" and that the failure of the clerk to issue capias on the information until more than two years after the commission of the offense charged is a mere failure to perform a ministerial duty, which does not render the information invalid nor make the prosecution subject to the bar of the statute of limitations. This principle might properly be extended to apply to a mere failure of the clerk to docket a case where the information had been duly filed, under Section 8258, C. G. L., but the question here involved goes deeper than that. Was there, under the facts of this case, an actual and valid *filing* of the information in the court within the meaning of our laws? It is true, the solicitor had the information marked filed, but he immediately withdrew it, together with the capias, from the momentary custody of the clerk, and instructed the clerk to make no record entry of the same upon the docket, minutes, or any record book of his office, although the statutes made it the duty of that officer of the court to docket the case.

Section 11 of the Bill of Rights provides that: "In all criminal prosecutions the accused shall have the right to a speedy and public trial" * * * and "to demand the nature and cause of the accusation against him, to meet the witnesses against him face to face," etc.

It may well be that the county solicitor in this case acted from the best of motives; that is, he probably desired to have the accused arrested before he could escape, and feared that if the filing of the information was made a' public record, the accused might learn of it and flee the jurisdiction before he could be apprehended. Indeed, that

may have been what happened in this case, in spite of this precaution, as it was some five years later before the accused was arrested. But regardless of the good motives of the solicitor, the course of action pursued in this case was not in harmony with the quoted section of our Declaration of Rights nor with the constitutional and statutory provisions requiring the *filing* of the information, which mean an actual filing, that transfers the custody of the information from the prosecuting officer to that of the court. How can the accused secure a speedy trial, or demand the nature and cause of the accusation against him, or be confronted by the witnesses against him, under the circumstances disclosed by this case? If a prosecuting officer and his successors in office can keep an information off the court's records and in his or their own possession and custody for five years, why not for ten or fifteen years? And in the meantime, a possibly innocent defendant might have been deprived, by death or otherwise, of witnesses who would have been of material benefit to him upon a trial. To say that this particular accused person did not want a speedy trial would hardly justify a rule which would permit a prosecuting officer to have informations marked "filed" by the clerk and hold them, undocketed, for indefinite periods, and then have them docketed and the accused arrested thereon whenever in his discretion, or at his caprice, he saw fit to do so. The statutes do not contemplate this. In Collins v. State, 13 Fla. 651, it was held that to be valid, it must appear that an indictment was presented or delivered into court by a grand jury, and that in case the clerk omits to make a minute entry of the fact, the court may order it to be done at any time during the term. Whether such a minute entry is essential to the validity of the indictment was a question not decided in that case. But in the later case of Johnson v.

State, 24 Fla. 162, 4 So. 535, it was held that where the actual presentment in open court of the indictment by the grand jury was not controverted, the absence of a formal minute entry would not be fatal to the validity of the indictment, there being in the transcript evidence from which it could have been reasonably presumed, in the absence of a direct issue as to such presentment, that such presentment was made. The motion in arrest, raising the question, was held properly denied. And in Goodson v. State, 29 Fla. 511, 10 So. 738, it was held that the only recognized manner in which the findings of a grand jury can be authoritatively presented is in open court; that such presentment should preferably be shown by minute entry, or else by the file endorsement on the indictment itself, made by the clerk, showing that it was presented by the grand jury and filed in open court; and that where there was no evidence of open court presentment, a plea in abatement predicated upon such omission should be sustained.

Thus it appears that it is essential to the validity of an indictment that it shall be presented or returned in open court. And thus the custody of the indictment and all further power over it, passes from the grand jury to the court. After presentment, the grand jury cannot reconsider and withdraw an indictment. 31 C. J. 587. Now, in cases triable in the criminal courts of record, informations take the place of indictments, and are largely governed by the same rules of practice. Applying this principle of procedure, it would seem that the *filing* of an information with the clerk by the county solicitor would also require an actual and real transfer of custody from the prosecuting officer to the court, or to its clerk acting for the court as the custodian of its records, and that each information so filed should be lodged with and left in the custody of the

clerk, whose duty under the statute it then becomes to docket each case and issue all necessary process, within a reasonable time. This was the conclusion reached in our recent case of Gomez v. Spencer. See 151 So., at page 397, citing King.v. State, 17 Fla. 183; Sims v. State, 26 Fla. 87, 7 So. 374, 376; 31 C. J. 636.

. The main purpose of Section 8258, Comp. Gen. Laws, which is derived from and follows the language of Section 1 of Chapter 4398'of the Acts of 1895, was to authorize the filing of informations and issuance of process thereon in vacation, without first obtaining leave of the Court. The title of Chapter 4398 was, "An Act to provide for a speedy disposition of causes in County Courts and Criminal Courts of Record." That the actual lodging of the information with the clerk is more important than the file mark is shown by the opinion of Mr. Chief Justice WHITFIELD in Johnson v. State, 58 Fla. 68, 50 So. 529, where, in discussing this statute, it was said:

"Section 3882, General Statutes of 1906, authorizes informations to be filed in vacation in the Criminal Court of Record, and where an information is properly lodged with the clerk of the court an omitted file mark may by the order of the court be placed upon the information *nunc pro tunc* when the facts warrant it. A capias duly issued on an information actually lodged with the clerk of the Criminal Court of Record is not rendered illegal because no file mark was placed upon the information. When an information is properly marked *nunc pro tunc* as of the day it was lodged with the clerk, a capias issued after the information was so lodged is admissible in evidence."

We have also held that an information cannot be amended without leave of the court (Fekany v. State, 149 So. 591). So an information, once duly filed, becomes a

court document, and should be kept in the court's archives rather than in the private files of the prosecuting officer. A mere temporary withdrawal of an information from the clerk's office with the clerk's permission, for some lawful purpose, might not affect the validity of an information which has already been duly filed, but in order for an information to have been duly filed in the first instance, it is just as important that it be lodged with and placed in the exclusive custody and control of the court, for whom the clerk acts, as that an indictment shall have been presented by a grand jury in open court. It appears to have been the policy of the Legislature to place informations, as a basis for prosecutions in criminal courts of record, as nearly as possible on an equality, in both dignity and importance, with indictments presented by a grand jury (see Sections 8257 and 8366, C. G. L.), and therefore the safeguards thrown around them should be just as carefully observed.

In his able brief, the State Attorney argues that to hold the county solicitor's action, as shown by the agreed statement of facts in this case, to be unwarranted by our statutes, would hamper the ends of justice by preventing the practice of filing "secret" informations, which he contends is often necessary in order to apprehend criminals. He further contends that this practice is permitted as to indictments by Section 8222, C. G. L., which provides that "no grand juror or officer of the court, unless the court shall so order, shall disclose the fact that any indictment for a felony has been found against any person not in custody or under recognizance, *otherwise than by issuing process on such indictment,* and until such person has been arrested." (Italics supplied). This statute does not abrogate presentment in open court, nor the duty of the clerk to make a minute entry of that fact. In further reply to this con-

tention, it might be said that the county solicitor has two years after the commission of a crime in which to institute the prosecution, and if he thinks it necessary to hold up filing the information until the accused can be immediately arrested, he may do so within such period. Furthermore, when an information is filed, the statute does not require the clerk to make public announcement of that fact, nor does the statute require the clerk to *immediately* docket the case. He might even go so far as to purposely refrain from docketing the case, for a reasonable length of time after the filing of the information, if it were necessary to do so in order to facilitate the arrest of the accused. But it is just as essential, under our Constitution and statutes, that an information be *duly and actually filed by being lodged in the custody of the court* in order to make it a valid information as it is that an indictment must be *presented* by a grand jury *in open court* in order to make it a valid indictment. Except to the very limited extent above alluded to, our statutes, as we understand them, make no provision for either "secret" indictments, or "secret" or "vest-pocket" informations.

We now recur to the inquiry as to whether the question presented in this case is one which may be considered in habeas corpus proceedings; that is, whether in habeas corpus proceedings, an information, duly sworn to and valid on its face, sufficiently charging an offense, and bearing a file mark also valid on its face, made by the clerk of a court of competent jurisdiction, can be collaterally attacked by parol evidence for the purpose of showing that under the circumstances attending the attempt to file it, it was not in fact legally filed.

In the case of Gomez v. Spencer, *supra,* we intimated that if the facts alleged in the petition had been proven, a very

serious question would have arisen as to whether the information had ever passed out of the custody of the county solicitor, so as to constitute a *bona fide filing* of the information, which was essential to its validity. But we also held that these questions were not so presented and proven as to be available for relief on habeas corpus, and could be more properly raised by the accused at the trial of the case in the criminal court of record, by motion to quash, or in arrest. We also held, following the case of French v. Turner, 103 Fla. 425, 137 So. 521, that where an indictment or information appears valid on its face, the writ of habeas corpus should be quashed, although the petitioner may have a valid defense, based on the statute of limitations, as that is a defense proper to be presented at the trial. See also 29 C. J. 44-45, and *Ex parte* Clarkson, 72 Fla. 220, 72 So. 675.

However, the question involved in the present case probably goes beyond a mere attempt to set up the statute of limitations as the ground of relief in a habeas corpus proceeding; it really goes to the validity of the information itself, and to the jurisdiction of the court to issue process thereon.

But, the information, being valid on its face, and bearing the clerk's file mark duly signed and also valid on its face, and constituting record evidence of due and legal filing, and issuing from a court of competent jurisdiction, could the petitioner in habeas corpus proceedings in another court be permitted to show by parol evidence that the record evidence of filing was false and that the information was not in fact legally filed? This is a very close and difficult question. In our former opinion, in Gomez v. Spencer, *supra,* we indicated that this could not be done in habeas corpus proceedings, which proceedings are in the nature of

a collateral attack, and that on such an attack the record evidence of another court could not be impeached by parol. See 151 So., pages 398-399. This view we still adhere to, though to do so, requires the reversal of the judgment of discharge. In addition to the authorities cited on this point in our former opinion, see Hanley v. State, 50 Fla. 82, 39 So. 149; Bronk v. State, 43 Fla. 461, 31 So. 248; 29 C. J. 61-62-67 and 169-170; Kroier v. Kroier (headnotes 9 and 10), 95 Fla. 865, 116 So. 753; State, *ex rel.* Grebstein v. Lehman, 100 Fla. 481, 129 So. 818; 12 R. C. L. 1185, 1189; 1201, 1206.

In 31 C. J. 636, it is said: "In the absence of a mandatory statute, the validity of the filing of an information or of proceedings thereon is not affected by failure to enter the filing on the order book, or on the minutes or docket of the court; a proper minute or endorsement on the information itself is sufficient, the information, with the endorsements thereon, being a part of the record." See also Goodson v. State, *supra.* The clerk's file mark, when duly endorsed on the information and signed, is therefore a record entry of the filing which cannot be impeached collaterally by parol testimony. But if such file mark does not speak the truth, it is subject to direct attack in the court wherein the information purports on its face to have been filed.

Thus, in Hanley v. State, *supra,* this Court held that entries contained in the record proper of a trial court import verity and they cannot be questioned on habeas corpus; that if the record does not state the truth, application should be made to the trial court to make its record speak the truth. This Court held in that case that where a petition for writ of habeas corpus alleges that the petitioner was tried on Sunday and that the judgment is therefore void, but a certified copy of the record proper of the trial, which is made a part

of the petition, states that the trial was had on Saturday, a writ of habeas corpus will not be allowed.

While there are some cases to the contrary (see 29 C. J. 170), the general rule is that habeas corpus is a collateral attack, and that the presumption in support of the jurisdiction of the court, whose judgment or process is thus attacked, is conclusive in habeas corpus proceedings, unless a want of jurisdiction appears on the face of the record; that this presumption, and a *fortiori,* express recitals of jurisdictional facts, cannot be rebutted by evidence *de hors* the record. (29 C. J. 169.) In the same work (29 C. J. 170), it is said that: "In the Federal Courts the rule is that the presumption as to jurisdictional facts, about which the record is silent, may be overcome by evidence of facts, not contrary to the record, which show that the court was without jurisdiction, but affirmative recitals of jurisdictional facts cannot be contradicted." There are also cases holding that this presumption in favor of jurisdiction does not avail as to inferior courts and that want of jurisdiction may be shown by any evidence available, except that express recitals of jurisdictional facts cannot be contradicted by evidence *aliunde.* See 29 C. J. 171.

It might be remarked that the criminal court of record can hardly be deemed an inferior court, to the circuit court, in proceedings relating to offenses which, under the Constitution and statutes, it is vested with jurisdiction to try. The circuit court in which this habeas corpus proceeding was had, was without jurisdiction of offenses of the character charged against the petitioner. The criminal court of record did have such jurisdiction.

For the reasons above pointed out, the judgment of discharge must be reversed and the cause remanded for the entry of an order remanding the petitioner to the custody

of the sheriff, without prejudice to the right of the petitioner to raise the questions here attempted to be presented by appropriate proceedings in the Criminal Court of Record of Hillsborough County.

Reversed and remanded.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., concur.

DAVIS, C. J. (concurring).—My view is that if the identical facts which were made to appear in this habeas corpus proceeding had been made to appear in the criminal court of record in support of a motion to quash the whole proceedings in that court (as distinguished from a motion to quash the information alone which latter motion is in the nature of a demurrer and goes only to the face of the opposite pleading) the motion would necessarily have to be granted, because it is not only within the power of a court, but it is a court's duty to quash proceedings pending before it which have been improperly brought on an illegally presented information when that fact is brought officially to the court's attention. 7 R. C. L., par. 47, page 1019; Loomis v. Lane, 29 Pa. St. 242, 72 Am. Dec. 625; 23 R. C. L., par. 18, page 166; Ray v. Williams, 55 Fla. 723, 46 Sou. Rep. 158; Keen v. State, 89 Fla. 113, 103 Sou. Rep. 399.

However, to permit collateral attacks in a circuit court as to matters of procedure in a criminal court of record, would simply result in a determination by the circuit court (perhaps in some distant part of the State) of those matters *dehors* the face of the record as made, whose primary determination lies within the jurisdiction of the criminal court of record alone. Whatever pertains to the integrity of the records of a court of record should be first directly challenged in the court whose record is involved, and not collaterally in some distant court. Only a court possessing

appellate power over the criminal court of record has authority to direct a change in the record of a criminal court of record, where the latter court fails or refuses to make a proper record of its official acts. See Bishop v. Chillingworth, Judge, 114 Fla. 289, 154 Sou. Rep. 254 (opinion filed March 19, 1934, during the present term).