112 So.2d 284 (1959)
Joe BEDAMI, Petitioner,
v.
STATE of Florida, Respondent.
No. 964.
District Court of Appeal of Florida. Second District.
April 29, 1959.
Rehearing Denied June 1, 1959.
*285 Frank Ragano of Hawes & Ragano, Tampa, for petitioner.
Richard W. Ervin, Atty. Gen., Edward S. Jaffry, Asst. Atty. Gen., for respondent.
ALLEN, Judge.
The petitioner, Joseph Bedami, in the midst of his trial in the Criminal Court of Record of Hillsborough County, filed a sworn application for a subpoena duces tecum to compel the production of the stenographic notes and transcription of the testimony previously given by the state's witness, Traina, concerning the case before the county solicitor in which the petitioner contends the solicitor was acting in an official investigation to determine whether or not the charges embraced in the impending information should be filed against petitioner. The application was sworn to and set out in substance that the witness Traina had, prior to the filing of the pending information, appeared before the county solicitor in an official investigation, inquisitorial in natural, where the said solicitor was acting in effect as a one-man grand jury determining whether to file the pending information against petitioner. That said witness had testified before the solicitor to matters material to and covering and touching on the subject matter of his testimony in chief, and that said testimony was taken down stenographically and transcribed, and was then in the possession of the solicitor, his assistants, reporters, secretaries, or other employees. That petitioner had been informed by some people who had talked to the witness, Traina, subsequent to his giving testimony before the solicitor and prior to his testimony at the trial, that Traina had said in effect that the testimony he gave the solicitor and the testimony he would give at the trial would be different and in conflict. That it was essential to the administration of justice and in order that the petitioner may be enabled *286 to properly cross-examine the witness Traina and to lay the proper predicate for impeachment of the said witness, in the event his statement before the solicitor was in fact substantially in conflict with his trial testimony, that he have said testimony. That the denial of said application would deprive the petitioner of his rights secured under Section 11 of the Declaration of Rights to the Florida Constitution, F.S.A., to have compulsory process for the attendance of witnesses in his favor, as well as his rights to due process of law and equal protection of the law as guaranteed and protected by the Fourteenth Amendment to the Federal Constitution.
The record shows no denial, traverse or other challenge to the sworn application for the subpoena. The application was denied by the trial judge. An appeal was taken to the circuit court which affirmed the criminal court of record. It is to this order of the circuit court that the petition for certiorari is directed.
The respondent questions the power of this court to review the decision of the circuit court sitting as an appellate court because of the limited nature and scope of common law certiorari and cites the case of Benton v. State, 74 Fla. 30, 76 So. 341, 343, as authority for its contention.
We have reviewed the decision of the Supreme Court in Benton v. State, supra, which is a splendid discussion on the limitation of appellate review by a superior court through common law certiorari. The Court, in its opinion, states:
"It is sought by this proceeding to have this court review the evidence taken before the county judge and determine its sufficiency to support the verdict, and in doing that to first determine whether certain evidence offered by the state and admitted over the defendant's objection was admissible, and, if we find that it was not, then to quash the proceedings before the circuit court, which affirmed the judgment of the county judge, as being illegal. To do this would be to confound the supervisory power of this court with its appellate jurisdiction.
"It appears from the record that the county judge had jurisdiction of the offense and the person of the defendant, and that the circuit court as the court of final appellate jurisdiction acquired jurisdiction in accordance with the forms prescribed by law, and acted within the limits of its jurisdiction and powers; and, no question being raised as to the validity of the act under which the prosecution was held, the proceedings of the circuit court appear to be legal, and the writ should be quashed, because in this proceeding this court has no power to inquire into the alleged error committed in admitting certain evidence  that is to say, no power to question the correctness of the judgment on its merits. It is therefore ordered that the writ of certiorari be and the same is hereby quashed."
In Mathews v. Metropolitan Life Insurance Co., Fla. 1956, 89 So.2d 641, it is stated that the duty of the trial judge to apply a correct principle of law to admitted facts is such a fundamental and essential element of the judicial processes that a litigant cannot be said to have had the "remedy by due course of law" guaranteed by DR § 4 if he fails or refuses to perform that duty.
In State v. Staley, Fla.App. 1957, 97 So.2d 147, this Court held that on certiorari the court could remedy the erroneous application of correct principles of law to admitted facts. And in Martin v. Powell, Fla.App. 1958, 101 So.2d 610, it was held that where the doctrine of res ipsa loquitur was incorrectly applied the resulting judgment was illegal and could be quashed on certiorari.
The petitioner in the instant case contends that his constitutional rights were infringed by the refusal of the judge of the criminal court to permit him to subpoena the notes of the reporter in order to *287 obtain the testimony of the state's principal witness where he had appeared before the county solicitor and testified for the purpose of determining whether or not an information should be filed against the defendant for the purpose of cross-examining this witness to see if there were contradictory statements made in the sought testimony and the testimony of the said witness on the trial. We hold that under the stated question we would have power under common law certiorari to review the record to determine if the constitutional rights of the defendant have been violated.
The Supreme Court of Florida in the case of Trafficante v. State, 1957, 92 So.2d 811, 814, held that the defendant's sworn application for subpoena duces tecum to obtain the transcript of the testimony which state witness had given before the grand jury, set up materiality of evidence sought to be reached by subpoena, application would be taken, for purpose of appeal involving alleged error in denial by trial court of application and offer of proof, as proving materiality to extent necessary to warrant examination of transcript by trial court with view to making final determination of its materiality, and that the refusal of the trial judge to permit the same was error.
Under the law in Florida, the solicitor of the criminal court of record has power to file a direct information if he chooses. As an alternate procedure, the state's attorney can bring a witness before the grand jury and have the grand jury file an indictment against the defendant, which in turn can be certified by the circuit judge to the criminal court of record for trial. From the indictment so transferred, the county solicitor can then file an information.
In the case of Trafficante v. State, supra, the Supreme Court said:
"Later, at the trial, when the witness Dietrich was tendered to defense counsel for cross-examination, appellants presented to the court a sworn application for subpoena duces tecum to be directed to the official court reporter. This application set out that the official reporter had reported and transcribed the witness Dietrich's testimony before the grand jury, and that said testimony was material and relevant to, and in conflict with, the testimony of this witness given on direct examination at the trial. Appellants offered to prove these facts. The application and offer of proof were denied by the trial court.
"Appellants contend that they had a right to the issuance of the subpoena duces tecum to compel the court reporter to appear as a defense witness and to bring with her the transcript of the witness Dietrich's testimony as given before the grand jury, making same available to defense counsel in order that it might be utilized in cross-examination of the witness Dietrich. In support of their contention, appellants rely upon our opinions in Vann v. State, Fla., 85 So.2d 133, and State ex rel. Brown v. Dewell, 123 Fla. 785, 167 So. 687, as well as the case of United States v. Aaron Burr, Fed. Cas. No. 14,692d. They also contend that they were denied their rights under the 14th Amendment to the Federal Constitution and Section 11 of the Declaration of Rights of the Florida Constitution, F.S.A., the latter of which provides that in all criminal prosecutions the accused `shall * * * have compulsory process for the attendance of witnesses in his favor.' The State contends, however, that these authorities do not compel the result sought by appellants because, in the State's view, the witness Dietrich's testimony before the grand jury was not material to the issues in this case, and the grand jury presentment or findings had not been made public at the time of trial.
"We cannot accept the contention of the State herein. Appellants' sworn *288 application for the subpoena, as we have stated, sets up the materiality of the evidence sought to be reached by the subpoena and must be taken for the purpose of this appeal as proving materiality to the extent necessary to warrant examination of the transcript by the court with a view to making final determination of its materiality. See Vann v. State, supra, 85 So.2d 133, and Coco v. State, Fla., 62 So.2d 892. Moreover, the record abounds with evidence that the grand jury had returned its presentment and made its findings public prior to the trial of this cause."
The Supreme Court of Florida, in State ex rel. Brown v. Dewell, 123 Fla. 785, 167 So. 687, stated that testimony given by a witness before a grand jury may be subpoenaed by the accused after a proper showing was made during the trial that the witness is giving contradictory testimony concerning the same transaction to which he testified before the grand jury. The Court further stated that this holding did not mean the trial judge should order turned over to the defendant's counsel memoranda belonging to and in the possession of the state's attorney for the purpose of enabling the defendant to prepare his defense or impeach state witnesses.
The respondent herein cites McAden v. State, 155 Fla. 523, 21 So.2d 33, 35, as controlling on the issue in this case. The McAden case involved an indictment for murder. Pearl McAden was indicted by a grand jury. He was placed on trial and convicted of murder in the second degree. Prior to the trial McAden's counsel attempted to procure through the use of subpoena duces tecum a transcript of the testimony of certain witnesses given "at all hearings and investigations had between January 15 and February 1, 1944." These hearings were held in the city hall of Tampa and the county jail of Hillsborough County. His motion was denied by the trial court and he entered an appeal to the Supreme Court of Florida. The Supreme Court affirmed the trial court stating, "we are not familiar with any statute or rule of law making it the duty of a State Attorney or his assistants to deliver to counsel for defendant a transcript of testimony of state witnesses taken or made at a conference had or held between the State Attorney and assistants and the State's witnesses, nor can counsel for defendant in a criminal case be required to deliver to the State Attorney a transcript of the testimony of witnesses for the defendant made at a conference between defendant's witnesses and his counsel." This principle is undisputed and is supported by many cases of this and other jurisdictions. It is to be noted, however, that in the McAden case the testimony sought was part of the work product of the State's Attorney made prior to the grand jury proceeding. The Court pointed out in the opinion:
"It is not clear from the petition that the named witnesses appeared before the State Attorney and associates pursuant to subpoenas ad testificandum or that either of the witnesses were examined in the hearings after the administration of an oath."
In the case of Johns v. State, 157 Fla. 18, 24 So.2d 708, the Supreme Court stated that the ruling of the McAden case would be controlling as the Johns case also involved a motion by the accused for a subpoena duces tecum directing the State's Attorney to turn over notes and testimony taken prior to the grand jury indicting the accused. The Court stated that McAden v. State, supra, is decisive of this phase of the appeal.
In the case of McIntosh v. State, 139 Fla. 863, 192 So. 183, 184, the Supreme Court granted a rehearing after reversing the lower court for refusal of the plaintiff's request to have a subpoena duces tecum issued and on rehearing the Court stated:
"In our opinion filed August 1, 1939, we reversed the judgment below on authority of State ex rel. Brown v. Dewell, *289 123 Fla. 785, 167 So. 687. On rehearing, it is urged that said judgment of reversal was erroneous because the facts in this case do not bring it within the rule in State ex rel. Brown v. Dewell, supra.
"In State ex rel. Brown v. Dewell, the application was to require production at the trial of testimony taken before the grand jury; the application was seasonably made and the record sought was one made in orderly court procedure. In other words, the matter sought was a legal record made by the official court reporter under direction of the court while, in the case at bar, the motion would indicate that the record required to be produced was in part from the private files of the County Solicitor and in part an official one made in due course.
* * * * * *
"It extends only to legal or public records that have been regularly made in due course of legal procedure and as to these, the application must be seasonably made. Not only that but it must be shown that the evidence sought is material and necessary to the defendant's cause. It in no sense reaches notes or evidence taken by the prosecuting officer at his expense and by his private stenographer. These are the private property of the solicitor. Motions of this kind made after the trial has commenced come too late and should be denied."
In McAden v. State, supra, the Court pointing out that the transcript sought did not cover the testimony given at a judicial proceeding and stating:
"It is not here contended that the testimony of the above-named witnesses was given either before a grand jury or a magistrate, but only before the official court reporter of the Circuit Court of Hillsborough County in the presence of the State Attorney, Assistant State Attorney and Special Assistant State Attorney. * * *" [155 Fla. 523, 21 So.2d 34.]
In Smith v. State, Fla. 1957, 95 So.2d 525, the Supreme Court held that the transcript of witnesses' testimony that was taken before the State's Attorney who had used the transcript for the purpose of impeaching witnesses should have been given to defense counsel for use during the trial.
In Lindberg v. State, 134 Fla. 786, 184 So. 662, at page 664, the Supreme Court of Florida stated:
"The record shows that the State's Attorney had conducted an investigation of this homicide and in doing this he had a stenographer to take and transcribe the statements of the witnesses. On cross examination of witnesses for the State in cases where the witnesses did not testify at the trial as they had testified, during the investigation, the State's Attorney, as a basis for impeachment, asked the witness under interrogation whether or not he had made a contradictory statement during the investigation and quoted from the stenographic transcript what purported to be the contradictory statement of the witness made during the investigation and where a witness denied having made such contradictory statement, the original statement might have been proved by the stenographer who took and transcribed the original statement.
"It is not shown that the transcribed testimony referred to was in any manner a court record.
"There was no attempt to introduce the transcribed statements as substantive evidence. They were simply used as memoranda to promote accuracy. So far as the record shows, the transcript involved was the private memoranda of the State's Attorney. It amounted to no more than the private memoranda made by counsel for either party on a pre-trial examination of witnesses *290 who would likely be called to testify at the trial. It is the right of counsel to make or have made memoranda of the statements of those who will probably be witnesses at a trial and to use that memoranda both to refresh his memory and for the purpose of impeachment, if the memoranda should become useful for that purpose, although the memorandum itself is not admissible as substantive evidence against the accused. See State v. Rhoads, 81 Ohio St. 397, 91 N.E. 186, 27 L.R.A.,N.S., 558, 18 Ann.Cas. 415; see, also, Havenor v. State, 125 Wis. 444, 104 N.W. 116, 4 Ann.Cas. 1052; People v. Fuski, 49 Cal. App. 4, 192 P. 552; Metzler v. U.S., 9 Cir., 64 F.2d 203."
The petitioner, in the splendid brief prepared by his counsel, states on page 7:
"At the outset, in order to clear the air of the confusion which surrounded this case in the Circuit Court, it might be well to state what this case is not about. This case does not involve an attempt by petitioner to compel the production of the private work products, memoranda or statement of a witness taken by a solicitor preparatory for trial. Petitioner concedes, as he always has, that he cannot compel the production of the statement of a witness before the Solicitor which was taken by the Solicitor preparatory to trying his case only, unless said statement is used by the Solicitor in the case.
"What is involved in this case is whether or not a defendant in a criminal case prosecuted in the Criminal Court of Record on an information filed by the Solicitor has a Constitutional right, upon a proper application, to reach the prior official testimony of the witness upon which the charge itself is based, where the defendant has reason to believe that said prior testimony of the witness is in material and substantial conflict with his Trial Court testimony. The fact that the Solicitor, in most cases in the Criminal Court of Record, serves as the indicting agency and also as the prosecutor at the trial, seems to create an air of confusion as to whether the testimony sought is the work product of the Solicitor or official testimony which is not privileged and which is subject to production where the defendant invokes his Constitutional right to compulsory process."
The record in this case does not disclose that the solicitor used or attempted to use the transcript of the testimony of the witness Traina for any purpose.
The petitioner contends that the prosecution was based upon the information and that the solicitor could not lawfully file an information except upon sworn testimony taken before him, acting, in effect, as a one-man grand jury, which testimony the solicitor must certify to under oath to be sufficient, if believed, to sustain the charge.
The judicial history of informations does not bear out the contention of the petitioner that a solicitor may file an information only upon sworn testimony before him or upon an indictment of a grand jury certified to the criminal court.
The case of Anderson v. State, 134 Fla. 290, 183 So. 735, 737, held that the statutes and constitution did not require that an information filed by the solicitor of a criminal court of record should be based solely and exclusively on testimony taken before him. It was contended in the case by the defendant that the only way in which the solicitor of the criminal court of record would be justified in filing an information would be to issue a subpoena directed to the witnesses desired and have the same served by the sheriff; that an oath be administered, and that the testimony so obtained would be the basis for the filing of the information, and that an affidavit made and filed before the *291 Justice of the Peace would not meet the requirements of the law and, therefore, that the information filed thereon was void ab initio. In objection to this contention, the Supreme Court said:
"It will be observed that Section 8257, C.G.L. [F.S.A. § 32.18], provides that the method of prosecutions in a Criminal Court of Record shall be upon information filed by the County Solicitor under oath, and the form of the oath to be administered to said officer is likewise provided for by the said statute. We are unable to read into these constitutional provisions, supra, or statutes controlling the subject, or the previous decisions of this court, the requirements, that the information so filed by a solicitor of the Criminal Court of Record shall be based solely and exclusively upon the testimony taken before him. Such a construction thereof is not warranted, nor justified by any reasonable inferences drawn therefrom. We have not overlooked the provisions of Sections 8259, 8260, and 8261, C.G.L. [F.S.A. §§ 32.20-32.22]."
In Bryan v. State, 41 Fla. 643, 26 So. 1022, 1025, the Supreme Court said:
"* * * The twenty-eighth section of article 5 of the constitution provides, in reference to criminal courts of record, that: `All offenses triable in said court shall be prosecuted upon information under oath, to be filed by the prosecuting attorney, but the grand jury of the circuit court for the county in which said criminal court is held may indict for offenses triable in the criminal court. Upon the finding of such indictment the circuit judge shall commit or bail the accused for trial in the criminal court, which trial shall be upon information.' A form of oath to be made by the prosecuting attorney and appended to the information is prescribed by statute. We do not understand counsel for plaintiff in error to insist that the form of oath prescribed by the statute is not in compliance with the requirement of the constitution that the prosecution must be by information under oath, but the contention is that the prosecuting attorney, though he signed an affidavit in the form prescribed by statute, yet he did not in fact make any oath to it, and, probably, further, that the failure of the officer signing the jurat to designate the court of which he was clerk vitiated the affidavit. We are of the opinion that defendant must be held to have waived whatever of defect there may have existed in the affidavit appended to the information. The requirement that the information must be under oath is to secure good faith on the part of the prosecuting officer, and the authorities seem to hold generally, under requirements that the information must be sworn to, that an accused must object to a defective affidavit before going to trial, or, at least, before verdict. * * We quote from the opinion in Hammond v. State, 3 Wash. 171, 28 P. 334, as follows: `* * * The only object of the verification is to insure good faith in instituting the proceedings. It bears the same relation to an information in a criminal action that it does in a complaint in a civil action. It is no substantial part of either the one or the other, and we see no reason why it may not be waived without prejudice to any substantial right of the defendant, or why he should not be held to have waived any irregularity or defect therein by not objecting before pleading to the merits.' (Citations omitted.) The failure to swear to the information would undoubtedly cause an abatement of the prosecution on proper showing before trial, but defendant entered the plea of not guilty, and raised no objection to the information or the affidavit attached until after verdict, and then by motion in arrest of judgment and for new trial." (Emphasis ours.)
*292 In State ex rel. Wendler v. Coleman, 137 Fla. 177, 187 So. 696, the Supreme Court held that an information need not be based solely upon testimony taken before the county solicitor.
In Kurtz v. State, 26 Fla. 351, 7 So. 869, 870, the Supreme Court said:
"The third assignment of error is `that the information herein is not sworn to as required by law.'
"Article 5, § 28, Const. 1885, provides: `All offenses triable in said (criminal) court shall be prosecuted upon information under oath.' Chapter 3731, § 13, Laws 1887 [F.S.A. § 32.18], prescribed the following oath to be made by the county solicitor to informations filed by him, to-wit: `Personally appeared before me ____, county solicitor, who, being first duly sworn, says that the allegations as set forth in the foregoing information are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged.' The affidavit of the county solicitor to the information in the case under consideration is strictly in conformity with that prescribed by the statute, and in our opinion it is in conformity with the requirements of article 5 of the constitution. Certainly the framers of the constitution never intended that the county solicitor should swear to such informations upon his own knowledge. Under this article of the constitution the legislature has prescribed the practice in the county criminal courts of record, and, among other things, the form of the oath to be taken by the county solicitors, which form has been followed in this case, and we can see no force in the contention that said oath is not in conformity with the constitution and the statute." (Emphasis ours.)
The Supreme Court held in Spencer v. Gomez, 114 Fla. 688, 154 So. 858, 860, that the constitution requires an information of the criminal court of record to be filed. The Court, in its opinion, saying:
"Thus it appears that it is essential to the validity of an indictment that it shall be presented or returned in open court. And thus the custody of the indictment and all further power over it, passes from the grand jury to the court. After presentment, the grand jury cannot reconsider and withdraw an indictment. 31 C.J. 587. Now, in cases triable in the criminal courts of record, informations take the place of indictments, and are largely governed by the same rules of practice. Applying this principle of procedure, it would seem that the filing of an information with the clerk by the county solicitor would also require an actual and real transfer of custody from the prosecuting officer to the court, or to its clerk acting for the court as the custodian of its records, and that each information so filed should be lodged with and left in the custody of the clerk, whose duty under the statute it then becomes to docket each case, and issue all necessary process, within a reasonable time. This was the conclusion reached in our recent case of Gomez v. Spencer. See 113 Fla. 220, 151 So. 395, at page 397, citing King v. State, 17 Fla. 183; Sims v. State, 26 Fla. 97, 7 So. 374, 376; 31 C.J. 636.
* * * * * *
"* * * But it is just as essential, under our Constitution and statutes, that an information be duly and actually filed by being lodged in the custody of the court in order to make it a valid information as it is that an indictment must be presented by a grand jury in open court in order to make it a valid indictment. * * *"
We are of the opinion that the proceedings involving statements of witnesses taken before the Solicitor of the Criminal Court of Record are not official documents or judicial functions as involved in this *293 case but are in effect the work product of the officer and not similar to evidence before a grand jury. Therefore, the petition for certiorari is denied.
KANNER, C.J., and SHANNON, J., concur.